# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF AMERICA, N.A., | Case No. 2:16-CV-255 JCM (NJK) |
| Plaintiff(s), | ORDER |
| v. | |
| TAPESTRY AT TOWN CENTER HOMEOWNERS ASSOCIATION, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Bank of America, N.A.'s ("BANA") motion for summary judgment against all claims as to all defendants. (ECF No. 50). Defendant Saticoy May LLC Series 9157 Desirable ("Saticoy") filed a response (ECF No. 55), and plaintiff filed a reply (ECF No. 56).[1]

## I.  Introduction

At issue is the real property at 9157 Desireable Court, Las Vegas, NV (the "property"). (ECF No. 50). BANA received a senior deed of trust on an FHA-insured loan; that transfer was recorded on March 20, 2012. (*Id.*).

Tapestry at Town Center Homeowners Association (the "HOA") "recorded a notice of delinquent assessment lien against the property on June 1, 2012," indicating a sum owed of $1,006.07. (*Id.* at 3). On November 4, 2013, Terra West Collections Group ("AMS") recorded a notice of default and election to sell based upon a $3,208.35 liability in favor of the HOA. (*Id.*).

Despite BANA's correspondence to AMS and attempt to satisfy the debt, the HOA recorded a notice of foreclosure sale on May 14, 2014. (*Id.*). Ultimately, the HOA foreclosed on

---

[1] The other defendants did not file a joinder to Saticoy's response.

**James C. Mahan**
**U.S. District Judge**

the property on June 18, 2014.[2] (*Id.*). Saticoy purchased the property at that sale. (*Id.*); *see also* (ECF No. 50-8).

Plaintiff's complaint alleges the following claims against the corresponding parties: (1) quiet title/declaratory judgment against all defendants; (2) breach of Nevada Revised Statute ("NRS") § 116.1113 against the HOA and AMS; (3) wrongful foreclosure against the same; and (4) injunctive relief against Saticoy. (ECF No. 1).

## II.  Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed

---

[2]  The court takes judicial note of exhibits 50-1–50-6 and 50-8. *See* Fed. R. Evid. 201.

to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Nonmovant's evidence is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   Discussion**

*a. Plaintiff's NRS 116.1113 and wrongful foreclosure claims*

Subsection (1) of NRS 38.330 states that "[u]nless otherwise provided by an agreement of the parties, mediation must be completed within 60 days after the filing of the written claim." Nev. Rev. Stat. § 38.330(1). However, while NRS 38.330(1) explains the procedure for mediation, NRS

38.310 is clear that no civil action may be commenced "unless the action has been submitted to mediation." NRS 38.310. Specifically, NRS 38.330(1) offers in relevant part:

> If the parties participate in mediation and an agreement is not obtained, any party may commence a civil action in the proper court concerning the claim that was submitted to mediation. **Any complaint filed in such an action must contain a sworn statement indicating that the issues addressed in the complaint have been mediated** pursuant to the provisions of NRS 38.300 to 38.360, inclusive, but an agreement was not obtained.

Nev. Rev. Stat. § 38.330(1) (emphasis added). Moreover, nothing in NRS 38.330 provides that NRED's failure to appoint a mediator within 60 days constitutes exhaustion, nor does the statute place the burden on NRED to complete mediation within a specified period of time.

Next, under NRS 38.300(3), a civil action includes "an action for money damages or equitable relief," but not "an action in equity for injunctive relief in which there is an immediate threat of irreparable harm, or an action relating to the title to residential property." Violation of NRS 116.1113 is a "civil action[] as defined in NRS 38.300." *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 558 (Nev. 2013) (finding that a claim for violation of NRS 116.1113 was properly dismissed for lack of compliance with NRS 38.310).

Further, "[a] wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 559 (Nev. 2013) (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 623 (Nev. 1983)). "The material issue in a wrongful foreclosure claim is whether 'the trustor was in default when the power of sale was exercised.'" *Turbay v. Bank of Am., N.A.*, No. 2:12–CV–1367–JCM–PAL; 2013 WL 1145212, at *4 (quoting *Collins*, 662 P.2d at 623). "Deciding a wrongful foreclosure claim against a homeowners' association involves interpreting covenants, conditions or restrictions applicable to residential property." *McKnight Family, L.L.P.*, 310 P.3d at 559. "This type of interpretation falls under NRS 38.310." *Id.* Additionally, NRS 38.310 applies to laws "contain[ing] conditions and restrictions applicable to residential property." *Id.* at 558. Therefore, plaintiff's claim of wrongful foreclosure must be mediated before this court may delve into its merits.

In sum, plaintiff's claims for violation of NRS 116.1113 and unjust enrichment will be dismissed as unexhausted for failure to mediate.

*b. Plaintiff's claim for injunctive relief*

Despite plaintiff's formulation of this request as a claim, injunctive relief is a remedy, not a cause of action. *See, e.g.*, *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 Fed. Appx. 680, 684 (9th Cir. 2014) (citation omitted). Therefore, this claim will also be dismissed.

*c. Declaratory relief/Quiet title*

In Nevada, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but 'each party must plead and prove his or her own claim to the property in question' and a 'plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (quoting *Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992)).

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see*

*also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

### 1. Inadequate tender

First, plaintiff argues that its efforts to tender payment to satisfy the super-priority lien on the property were sufficient to "preserve[] the seniority of the senior deed of trust." (ECF No. 50 at 7). Plaintiff is incorrect.

BANA did not tender the amount sent forth in the notice of default and election to sell, which stated an amount due of $3,208.35. (ECF No. 50-5). Rather, BANA tendered a lesser amount, specifically, $594.00. (ECF No. 50-7).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162."). BANA offered $594.00 based on its calculation of the nine months of unpaid HOA dues, without adequately accounting for the maintenance and nuisance-abatement charges. *See* (ECF No. 50 at 4). BANA does not provide an adequate explanation for its selectivity of inputs when calculating its proposed tender value.

BANA merely presumed, without adequate support, that the amount set forth in the notice of default included more than the superpriority lien portion and that a lesser amount based on BANA's own calculations would be sufficient to preserve its interest in the property. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale). Therefore, this argument fails.

### 2. Applicability of NRS Chapter 116

BANA argues that NRS Chapter 116 violates due process and that actual notice of an impending foreclosure sale is irrelevant because the Ninth Circuit, in *Bourne Valley Court Trust*

*v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017) ("*Bourne Valley*"), invalidated NRS chapter 116. (ECF No. 50).

However, the Ninth Circuit actually held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue in that case was the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). BANA has satisfied the first element as a deed of trust is a property interest under Nevada law. *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale"). However, BANA fails on the second prong.

Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, adequate notice was given to the interested parties prior to extinguishing a property right. In fact, BANA acknowledges having received the notice of default. (ECF No. 50-7 at 6) ("This letter is written in response to your Notice of Default with regard to the HOA assessments purportedly owed on the above described real property . . . ."). As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put BANA on notice that its interest was subject to pendency of action and offered all of the required information. *See also Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well

James C. Mahan
U.S. District Judge

- 7 -

established that one who is not prejudiced by the operation of a statute cannot question its validity."). Further, BANA does not dispute receiving actual notice of the foreclosure sale, but merely that "actual notice does not change the analysis." (ECF No. 50 at 11).

### 3. *Supremacy clause*

BANA next argues that the HOA lien statute cannot interfere with the federal mortgage insurance program or extinguish mortgage interests insured by the FHA. (ECF No. 50 at 12–18).

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal. 2000) (discussing program); *W Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance claim. 24 C.F.R. § 203.355. HUD's property disposition program generates funds to finance the program. *See* 24 C.F.R. § 291.1.

Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured property thus interferes with the purposes of the FHA insurance program. Specifically, it hinders HUD's ability to recoup funds from insured properties. As this court previously stated in *SaticoyBayLLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, the court reads the foregoing precedent to indicate that a homeowners' association foreclosure sale under NRS 116.3116 may not extinguish a federally-insured loan. No. 2:13–CV–1199 JCM (VCF), 2015 WL 1990076, at *4 (D. Nev. Apr. 30, 2015).

However, the instant case is distinguishable from these cases in that, here, FHA is not a named party. No named party seeks to quiet title against FHA. Thus, this argument provides no support for BANA as the outcome of the instant case has no bearing on FHA's ability to quiet title.

### 4. *Retroactivity*

Finally, BANA contends that *SFR Investments* should not be applied retroactively to extinguish the first deed of trust. (ECF No. 50 at 18–19).

James C. Mahan
U.S. District Judge

- 8 -

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR Investments* applies to this case.

**IV. Conclusion**

In sum, BANA has failed to show that it is entitled to summary judgment as to its claim for quiet title. In fact, it cannot succeed against Saticoy's counterclaim to quiet title. (ECF No. 10). Thus, title will be quieted in favor of Saticoy, as against BANA.[3] Moreover, its remaining claims will be dismissed.

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for summary judgment (ECF No. 50) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BANA's claims of breach of NRS 116.1113, wrongful foreclosure, and injunctive relief (ECF No. 1) be, and the same hereby are, DISMISSED.

IT IS FURTHER ORDERED that title in the property be, and the same hereby is, quieted in favor of Saticoy.

The clerk shall enter judgment accordingly and close the case.

DATED July 5, 2017.

UNITED STATES DISTRICT JUDGE

---

[3] This holding makes no determination as to the property interests of relevant federal entities.